UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                          ) Case No. 16-12687-B-7
                               )
LORAINE GOODWIN MILLER,        ) DC No. TGM-2
                               )
          Debtor.              )
                               )

**MEMORANDUM OF DECISION**

INTRODUCTION

     This decision holds that the debtor did not meet her burden
of proof to establish a claim of exemption in funds held by an
escrow holder even though the original source of those funds may
have been a benefit from the Public Employee Retirement System.
This decision also holds that even if the Debtor had met her
burden of proof and all excluded evidence was admitted, the
proceeds held by the escrow holder were not exempt even if those
proceeds were properly traced from the retirement benefit.

FACTS[1]

     Dr. Loraine Goodwin-Miller worked as a physician for the
California Department of Corrections and Rehabilitation (CDCR)
for fourteen years. She also operated the Weight Management
Center in the city of Madera, California and is on the "Central

_____

     [1] The following are the court's findings of fact and
conclusions of law under Fed. R. Civ. P. 52 made applicable to
contested matters under Fed. R. Bankr. P. 7052 and 9014(c). If any
of the following facts are deemed conclusions of law, the court
adopts those facts as conclusions of law. If any of the following
conclusions of law are deemed findings of fact, the court adopts
those conclusions as findings of fact.

1  Air Board" (Document No. 1). She is the sole proprietor of

2  "Goodwin Greenhouse" which is a non-profit domestic violence

3  shelter in Madera (Document No. 1).

4       In April 2014, Dr. Goodwin-Miller signed a contract to buy

5  a building located at 801 W. Yosemite in Madera, California from

6  James E. Walters for $205,000.00. An escrow was opened at Placer

7  Title Company. Dr. Goodwin-Miller was to put $20,000.00 down.

8  The remaining $185,000.00 was to be financed by Mr. Walters. The

9  origin of the $20,000.00 and its character when Dr. Goodwin-

10 Miller filed this bankruptcy case is this proceeding's pivotal

11 issue.

12      Dr. Goodwin-Miller was eligible for Public Employment

13 Retirement System benefits since she had been employed by CDCR.[2]

14 She withdrew $25,000.00 (less Federal withholding and a check

15 processing fee) from her account at Savings Plus.[3] The Debtor

16 deposited the net withdrawal ($19,997.50) into a dormant Weight

17 Management Center business account at Wells Fargo. One day

18 later, the Debtor tendered a $5,000.00 cashier's check to real

19 estate agent, Nellie Begley, of Begley Properties, which was

20 deposited into an escrow account at Placer Title Company. Less

21 than two months later, on June 2, 2014, the Debtor tendered a

22 cashier's check for $14,960.00 from the Wells Fargo account and

23 other cash to Placer Title to fund the down payment for the

24

[2] Future references to Dr. Goodwin-Miller will be to "Debtor."
25 This is for ease of reference only and no disrespect is intended by
26 the court to Dr. Goodwin-Miller or her professional status.
   [3] The Savings Plus account was actually a "401K" account.
27 While not clear from the testimony at the hearing, the court
28 presumes that the Debtor's PERS retirement benefits were at least
   in part "rolled over" into a 401K.

2

1  Walters/Goodwin-Miller escrow. The purchase never finalized.

2  Litigation ensued. The Debtor did not prevail on her specific

3  performance claim in Madera County Superior Court and Mr.

4  Walters' was awarded $50,000.00 against the Debtor.[4] The court

5  has no evidence that the escrow ever closed.

6      The Debtor filed this bankruptcy case, *pro se*, on July 26,

7  2016. James Salven was appointed Chapter 7 Trustee ("Trustee").

8  The schedules included a list of exemptions which were amended

9  on June 6, 2016. Among the exemptions claimed by the Debtor was

10 "100%" of the escrow funds. The parties have agreed that the

11 amount held by Placer Title for the Debtor's and the Trustee's

12 benefit is $20,119.11 ("escrow funds"). The Debtor claims the

13 escrow funds are traceable private and public retirement

14 benefits; disability benefits; worker's compensation benefits;

15 are in a deposit account; is a personal injury award and are

16 social security benefits.

17     The Trustee hired counsel. The Trustee filed objections to

18 the Debtor's exemptions on March 29, 2017 (Document No. 55).

19 Three exemption claims were challenged: a 1999 Lexus, the

20 Debtor's homestead, and the escrow funds. The objections to the

21 1999 Lexus, and the Debtor's homestead exemptions, were

22 eventually dropped by the Trustee after discovery proceedings.

23 This matter only proceeded on the Trustee's objection to the

24 Debtor's claimed exemption in the escrow funds.

25     The Debtor opposed the Trustee's objection (Document No.

26 61) and attached numerous exhibits to her response. The parties

27

28     [4] There is no evidence as to why or how this award was made.
It is not relevant to these proceedings.

1    engaged in discovery.[5] The court scheduled an evidentiary
2    hearing, which was held February 2, 2018.
3         At the hearing, the Debtor offered several documents as
4    exhibits. The exhibits were marked. The exhibits showed the net
5    withdrawal of $20,000.00 from the Savings Plus account; deposit
6    into the Wells Fargo account; withdrawals from the Wells Fargo
7    account; payment of $5,000.00 to Nellie Begley and the remaining
8    down payment balance deposited into the escrow two months later
9    by the Debtor. The Trustee objected to the admission of those
10   exhibits for lack of foundation and hearsay. The court sustained
11   those objections. The Debtor testified about the various
12   transactions. The Trustee objected to some of the testimony. The
13   court made various rulings on those objections.
14
15                    CONTENTIONS OF THE PARTIES
16        The Debtor contends that the escrow funds are directly
17   traceable to the withdrawal from the Savings Plus 401K account
18   and that the funds in that account were derived from her PERS
19   retirement benefits. Consequently, the Debtor claims, under Cal.
20   Civ. Proc. §§ 704.110 and 703.080 the $20,119.11 is fully
21   exempt.
22        The Trustee counters, contending the Debtor has not met her
23   burden of proof to establish tracing into the escrow account and
24   that the escrow account is not the same as other accounts to
25   which exempt property proceeds can be traced under California
26   law.
27        _____
           [5] A review of the docket will reflect the Trustee did file
28   motions to compel the Debtor's compliance with certain discovery
     demands. The court has entered separate orders on those matters.

4

1                         JURISDICTION

2        The United States District Court for the Eastern District

3   of California has jurisdiction of this bankruptcy proceeding

4   under 28 U.S.C. § 1334(b) in that this is a civil proceeding

5   arising under Title 11 of the United States Code. The District

6   Court has referred this matter to this court under 28 U.S.C. §

7   157(a). This is a "core" proceeding under 28 U.S.C. §

8   157(b)(2)(B).

9

10                          ANALYSIS

11  1.   The Debtor did not meet her burden of proof that the escrow

12  funds were exempt when the petition was filed.

13       When a Debtor files a Chapter 7 petition, all of the

14  Debtor's legal or equitable interests in property become

15  property of the estate, subject to the Debtor's right to reclaim

16  certain property as exempt. *Schwab v. Reilly*, 560 U.S. 770, 774

17  (2010). 11 U.S.C § 522 provides a default list of exemptions,

18  but allows states to opt out of the Federal scheme and define

19  their own exemptions. 11 U.S.C. § 522(b)(2), (b)(3)(A), (d).

20  California has opted out of the Federal exemptions scheme and

21  permits its Debtors only the exemptions allowable under state

22  law. Cal. Civ. Proc. § 703.130. The bankruptcy court decides the

23  merits of state exemptions, but the validity of the exemption is

24  controlled by California law. *Diaz v. Kosmala (In re Diaz)*, 547

25  B.R. 329, 334 (9th Cir. B.A.P. 2016) (citing *LaFortune v. Naval*

26  *Weapons Ctr. Fed. Credit Union (In re LaFortune)*, 652 F.2d 842,

27  846 (9th Cir. 1981)). California exemptions are to be broadly

28

1  and liberally construed in favor of the Debtor. *Elliott v. Weil*

2  *(In re Elliott)*, 523 B.R. 188, 192 (9th Cir. B.A.P. 2014).

3       A Debtor's exemption rights are determined as of the

4  petition date. *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d

5  1193, 1199 (9th Cir. 2012) ("under the so-called 'snapshot'

6  rule, bankruptcy exemptions are fixed at the time of the

7  bankruptcy petition."); *Gose v. McGranahan (In re Gose)*, 308

8  B.R. 41, 45 note 7 (9th Cir. B.A.P. 2004). So, the Debtor's

9  exemption rights were fixed on the day she filed the bankruptcy

10  petition, July 26, 2016 (Document No. 1). On that date it is

11  beyond dispute that the escrow funds at issue were being held by

12  Placer Title Company for the benefit of the Debtor, the Debtor's

13  estate, and Mr. Walters.[6],[7]

14       Generally, a Debtor's claimed exemption is presumptively

15  valid, and the objecting party has the burden of proving that

16  the exemption is improper. *In re Diaz*, 547 B.R. 336 (citing

17  *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 note 3

18  (9th Cir. 1999); Fed. R. Bankr. P. 4003(c)). However, where a

19  state law exemption statute specifically allocates the burden of

20  proof to the Debtor, as California has done here, Rule 4003(c)

21  does not change that allocation. *Diaz*, 547 B.R. 337; Cal. Civ.

22  Proc. § 703.580(b). Thus, the Debtor here has the burden to

23  prove that she is entitled to the exemptions she claims.

24

25       [6] The Trustee and the Debtor have advised the court that Mr.

26  Walters no longer makes any claim to the escrow funds.

27       [7] The Trustee filed an adversary proceeding against Placer
     Title and others for turnover. See Fed. R. Bankr. P. 7001. That

28  adversary proceeding (17-01039) is abated pending the outcome of
     this contested matter.

1    The evidence submitted before the court is scant. The

2    Debtor was a believable, intelligent, and articulate witness.

3    She appeared before the court to be calm, well-organized, and

4    credible[8]. No proper foundation was laid for the admission of the

5    documents evidencing tracing from the 401K account directly into

6    the escrow account and temporarily passing through Weight

7    Management's Wells Fargo Bank account. No foundation was

8    presented for the tendering of the $5,000 check to Begley

9    Properties or the funding of the escrow included in the escrow

10   closing statement. The Trustee made foundation objections to the

11   admission of all of those documents. Even if a proper foundation

12   was presented, establishing that the documents were what the

13   Debtor purported them to be, Fed. R. Evid. 901(a), the documents

14   offered by the Debtor are almost entirely hearsay and excluded

15   by Fed. R. Evid. 802. No testimony of the custodian of the

16   business records at issue was presented by the Debtor, nor a

17   certification in compliance with Fed. R. Evid. 902(11) or (12),

18   803(6). Thus, there is no applicable exception to the rule

19   against hearsay permitting the admission of the documents under

20   Fed. R. Evid. 803.

21

22   [8] The court is constrained to point out though that a few days
     after the matter was submitted, the Debtor tendered a declaration
23   to the court stating facts she claims she remembered since the
     hearing. Six days after the matter was submitted the Debtor
24   submitted an additional declaration (again, her own). The
     declarations and accompanying documents were apparently not served
25   on the trustee or his counsel, were not filed as part of the
     record, and are improper *ex parte* communications. They have not
26   been considered. Even *pro se* litigants must comply with court
     rules. *Clinton v. Deutsche Bank Nat'l Trust Co. (In re Clinton)*,
27   449 B.R. 79, 83 (9th Cir. B.A.P. 2011).

28

1   When asked by the court, the Debtor did state that both

2   Wells Fargo and Nationwide Retirement Solutions (apparently a

3   successor or other corporate "relation" to Savings Plus) were

4   served with a subpoena to testify. The court was not provided

5   with copies of the subpoenas. However, the Debtor did provide

6   copies of proofs of service that show both parties were tendered

7   a $50 witness fee and a subpoena to appear and testify at a

8   hearing or trial in a bankruptcy case and to produce documents.

9   But, both proofs of service show service on an agent for service

10  of process not delivery to a named person since the subpoenas

11  purportedly required attendance. See Fed. R. Civ. Proc. 45(b)(1)

12  (applicable to bankruptcy proceedings by Fed. R. Bankr. P.

13  9016). In sum, Debtor did not meet her burden of proof to

14  establish tracing from the 401K account to the escrow account.

15  So, the Debtor's claim of exemption under Cal. Civ. Proc. §

16  704.110 fails for lack of proof.

17   The same infirmity applies to the Debtor's proof under the

18  other exemptions claimed for the escrow funds. Cal. Civ. Proc. §

19  704.115(b) states that amounts "held, controlled, or in process

20  of distribution, by a private retirement plan for the payment of

21  benefits and after payments, those funds are exempt." But, the

22  Debtor failed to prove that the escrow funds were in fact

23  retirement benefits even if they could be deemed from a "private

24  retirement account." Cal. Civ. Proc. § 704.130(a) states that

25  "[b]efore payment, benefits from a disability or health

26  insurance policy or program are exempt without making a claim.

27  After payment, the benefits are exempt." There was no evidence

28  before the court that any funds at issue were payments from a

1  disability or health insurance policy.[9] Cal. Civ. Proc. §

2  704.140(a) states that "except as provided in Article 5 of

3  Chapter 6, a cause of action for personal injury is exempt

4  without making a claim." Subsection b states that "except as

5  provided in subdivisions (c) and (d), an award of damages or a

6  settlement arising out of personal injury is exempt to the

7  extent necessary for the support of the judgment debtor and the

8  spouse and dependents of the judgment debtor." There is no

9  evidence that any of the benefits at issue were from a personal

10 injury claim. The Debtor's schedules do not reveal a personal

11 injury claim.

12      At the conclusion of the evidentiary hearing, the Debtor

13 did request additional time to present the subpoenaed witness

14 testimony. But, since the court did not have the actual subpoena

15 to review and since the subpoenas were not likely served

16 correctly, the court declined the Debtor's request. The

17 evidentiary hearing had been on calendar for quite some time –

18 since the fall of 2017. The Debtor had sufficient time to engage

19 in and complete discovery which may have abrogated the need to

20 have custodial witnesses testify concerning the documents

21 offered.[10]

---

[9] The Debtor does receive Social Security Disability Income.
However, the Debtor has always maintained that the source of the
funds in the escrow account were originally from her PERS benefits.

[10] In addition to the basis for the exemption claims discussed,
the Debtor's amended claim of exemption also claimed the escrow
funds were exempt as worker's compensation or social security
benefits. The same proof problems apply to those claims as well. No
worker's compensation claim was listed in the Debtor's schedules.
The Debtor has also maintained that the source of the funds at
issue was not social security benefits.

1   2.   Even if the offered documents and testimony had been

2   admitted, it would not change the court's ruling.

3        Judges can reasonably differ about evidentiary rulings.

4   Another judge could find that the evidence offered here by the

5   Debtor was sufficiently authenticated. After all, Fed. R. Evid.

6   903 provides that a subscribing witnesses' testimony is not

7   always necessary to authenticate documents (see also Fed. R.

8   Evid. 901(a)); *Melridge v. Heublein*, 125 B.R. 825, 829 (D. Or.

9   1991); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.

10  Supp. 1190 (E.D. Pa. 1980). It is the Debtor's burden here as

11  proponent of the evidence to establish that the evidence is

12  authentic. The Debtor, however, could rely on circumstantial

13  evidence and need not present the testimony of the original

14  custodian of records. *Melridge,* 125 B.R. at 828. The sufficiency

15  of authentication is always discretionary with the court.

16  *Security Farms v. International Bhd. of Teamsters,* 124 F.3d 999

17  (9th Cir. 1997). Another judge may, for example, note that the

18  distinctive characteristics of the documents presented and all

19  the circumstances surrounding their presentation would be

20  sufficient authentication. See Fed. R. Evid. 901(b)(4). The

21  documents offered by the Debtor consisted largely of copies of

22  bank or account statements that displayed familiar trade dress

23  and appeared to be prepared in the ordinary course of the

24  business of the statement preparers. Also, the signatures on the

25  cashier's checks and money orders may in fact be self-

26  authenticating. See Fed. R. Evid. 902(9); Cal. Comm. Code §§

27  3302, 3308, 8107(b).

28

10

1   　　　Another judge may find the hearsay problem solvable by

2   applying the "residual hearsay" exception under Fed. R. Evid.

3   807. The elements of the exception could be found to be present.

4   The documents appear to be trustworthy based on circumstantial

5   evidence. The copies presented to the court appear to be

6   originally prepared in the ordinary course of business and the

7   Trustee did not dispute the journey of the funds urged by the

8   Debtor or the authenticity of the copies offered. The documents

9   do relate to a material fact in dispute - the tracing of exempt

10  retirement proceeds. The documents are also more probative than

11  other evidence the Debtor could obtain through reasonable

12  efforts. Here, the Debtor did serve a subpoena (albeit

13  improperly) on two potential witnesses who did not appear and

14  whose testimony would not likely be contradicted by the Trustee

15  who had planned to call no witnesses except perhaps an

16  unidentified rebuttal witness. Finally, the admission of the

17  documents could be found to be in the interest of justice and

18  consistent with the manner in which the rules of evidence should

19  be applied. See Fed. R. Evid. 102.

20  　　　In fact, the Trustee who objected to the admission of the

21  evidence never raised a question as to the reliability of any of

22  the offered documents. To be sure, the Trustee did not waive his

23  objections to their admission but they were before the Trustee

24  very early in the proceedings. They were part of what was

25  originally filed by the Debtor in opposition to the Trustee's

26  objection. (Document No. 61). The opposition was filed on April

27  11, 2017, which is nearly ten months before the evidentiary

28  hearing. The Trustee certainly had an opportunity to explore and

1 | examine the reliability of the documents when he deposed the
2 | Debtor.
3 |     The court asked the Debtor at the evidentiary hearing what
4 | she hoped to prove through the witnesses who did not appear. The
5 | court allowed the Debtor to make her offer of proof and asked if
6 | the Trustee would stipulate to the admission of the evidence and
7 | to the facts the Debtor hoped to prove. He would not. In any
8 | event, the admission of all the documents, and the testimony of
9 | the absent witnesses, would not change the result since the
10 | retirement funds lost their exempt character when they were used
11 | to fund the purchase of the building.
12 |     First, the escrow account is not a "deposit account"
13 | subject to the tracing of an exempt fund under California law.
14 | Cal. Civ. Proc. § 703.080(a) provides, "Subject to any
15 | limitation provided in the particular exemption, a fund that is
16 | exempt remains exempt to the extent that it can be traced into
17 | deposit accounts or in the form of cash or its equivalent."
18 |     The escrow is not a "deposit account." Cal. Civ. Proc. §
19 | 704.080 defines "deposit account" to mean a "deposit account in
20 | which payments of public benefits or social security benefits
21 | are directly deposited by the government or its agent." The
22 | Placer Title escrow for the purchase of the building is not an
23 | account where public benefits or social security benefits are
24 | directly deposited. Also, Cal. Comm. Code § 9102(a)(29) defines
25 | a "deposit account" as "demand, time, savings, passbook, or
26 | similar account maintained with a bank. The term does not
27 | include investment property or accounts evidenced by an
28 | instrument." The Placer Title escrow is not a demand, time,

1  savings, passbook, or similar account. In particular, under

2  California law, escrow holders are not demand depositories.

3        Second, an escrow holder cannot unilaterally dispose of

4  funds that are subject to escrow. An escrow holder is the agent

5  of all the parties to the escrow at all times prior to

6  performance of the conditions of the escrow. *Spaziani v. Millar*,

7  215 Cal. App. 2d 667, 682 (1963) (citing *Shreeves v. Pearson*,

8  194 Cal. 699, 707 (1924)). An escrow holder requires consent of

9  both parties before removal of property, documents, or

10  instruments held by an escrow holder. *Karras v. Title Ins. &*

11  *Guar. Co.*, 118 Cal. App. 2d 659, 665 (1953). If an escrow holder

12  disposes of property [in escrow] in violation of instructions,

13  or otherwise breaches that duty, he will be responsible for any

14  loss occasioned thereby. *Spaziani*, 215 Cal. App. 2d at 682

15  (citing *Amen v. Merced Cty. Title Co.* 58 Cal. 2d 528 (1962)).

16  There is no evidence before the court here that Placer Title

17  acted as anything other than an escrow holder in the property

18  purchase transaction involving the Debtor and Mr. Walters. The

19  application of California law thus establishes that the funds

20  could not be unilaterally paid to the Debtor, or the Trustee,

21  for that matter, without conditions that have not been proven to

22  the court.

23        In fact, California law limits an escrow holder's duties

24  concerning escrow funds. An escrow holder has no duty to deposit

25  funds in an interest bearing account without an instruction to

26  do so. *Hannon v. W. Title Ins. Co.*, 211 Cal. App. 3d 1122, 1128

27  (1989). An escrowee is not a trustee of funds. Cal. Prob. Code §

28  82(b)(14) (West, 2018). "An escrow holder has no general duty to

1  police the affairs of its depositors . . . an escrow holder's

2  agency is limited to faithful compliance with instructions."

3  *Hannon,* 211 Cal. App. 3d at 1128 (citing *Schaefer v.*

4  *Manufacturers Bank*, 104 Cal. App. 3d 70, 77-78 (1980)); *Summit*

5  *Financial Holdings, Limited v. Cont'l Lawyers Title Co.*, 27 Cal.

6  4th 705, 711 (2002). Absent contrary escrow instructions, title

7  to deposits vest in a seller when the seller accepts the

8  underlying contract. *Rutherford Holdings LLC v. Plaza Del Rey*,

9  223 Cal. App. 4th 221, 233-34 (2014) abrogated on other grounds

10  by *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). Neither party

11  presented any evidence of the terms of the escrow instructions

12  for the Walters/Goodwin-Miller sale.

13      The retirement funds lost their exempt character when the

14  Debtor paid $5,000.00 out of the Wells Fargo account to Begley

15  Properties, which was deposited with Placer Title to open the

16  escrow. Also, when the Debtor made the larger payment from the

17  Wells Fargo account to Placer Title to fund her "down payment"

18  those funds lost their character as retirement funds. Neither

19  Ms. Begley nor Placer Title are "deposit accounts" to which

20  exempt funds can be traced. Therefore, even if the Debtor's

21  proffered documents and testimony were entertained by the court,

22  the result remains the same.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

CONCLUSION

2      For the foregoing reasons, the Trustee's Objection to the

3  Debtor's Claim of Exemption in the $20,119.11, being held by

4  Placer Title, is SUSTAINED. A separate order shall issue.

5

6

7

8

9
      Dated: Feb 12, 2018                    By the Court

10

11

12                                          René Lastreto II, Judge
                                            United States Bankruptcy Court
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

3

4      The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
5  parties below.  The Clerk of Court will send the Order via the
BNC or, if checked __X__, via the U.S. mail.
6

7
Loraine Goodwin Miller
8  1625 Howard Rd #277
Madera CA 93637
9

10 James Edward Salven
PO Box 25970
11 Fresno CA 93729

12
Trudi G. Manfredo
13 377 W. Fallbrook Ave., Ste. 102
Fresno CA 93711
14

15 Office of the U.S. Trustee
United States Courthouse
16 2500 Tulare Street, Room 1401
Fresno CA 93721

17

18

19

20

21

22

23

24

25

26

27

28